7067 PIRKL v. DVA Mr. Carpenter. May it please the Court. Kenneth Carpenter appearing on behalf of Regina PIRKL. In this matter, Your Honor, the issue on appeal is the meaning of the phrase in the Statute 5109, capital A, small b, quote, revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision. The Veterans Court relied upon a misinterpretation of this phrase. Whatever the meaning of that, why isn't this a situation in which essentially you're arguing that there was a queue in the 56 and I guess 66 decisions, and that that's the way an issue like this has to be raised? I mean, under the Cook case, there are only two ways to challenge a final judgment, and you've got to go by queue. Because those decisions were entirely dependent upon the 1953 decision. Those decisions could not have been made in the manner in which they were made, but for the 1953 decision. Well, that may be a perfectly good argument, but why isn't that an argument for queue in those decisions that has to be raised procedurally as a queue claim? Because under the plain language of the queue statute, once the Veteran has established queue, in this case the 1953 decision, it automatically nullifies any decisions that were made thereafter by the VA that were dependent upon the decision that was found to have contained clear and unmistakable error. In this case, the board in 2006 found that there was clear and unmistakable error in the 1953 decision, which had unlawfully terminated Mr. Perkle's total rating. Based upon that, any other decision that happened thereafter was dependent upon the unlawful reduction of his rating. His rating in 1956 would have been a total rating and not a 70% rating, but for the error in 1953. The same holds true for the rating decision in 1966. I think the board found that the 56 and 66 decisions were based on an independent basis. It didn't depend on the 53 rating. Let me ask you this question. Once we go back and the 53 rating was changed to 100%, so ab initio we have a new rating, what type of standard did the VA have to apply in the 56 rating? They would have had to apply the same standard that was applicable in 1953. They would have had to apply the 3.170 regulation that required a period of employment of three to six months before a total rating could have been reduced. But that's precisely the problem in this case is that what happened in 1956 is the 1956 decision was confronted with a rating that was 70%. Well, then let me ask you this. To reduce a 100% rating, what type of standard, what has to be shown? Which standard applies? Is it a material improvement standard? That's correct, Your Honor, based upon the provisions of both 3.170 as well as 3.343. And that evidence must have been of record at the time of the 1956 decision and as well at the time of the 1966 decision. But what was adjudicated in 1956 and 1966 by the VA was entitlement to a scheduler rating at a scheduler rating less than the 70% in 1956 and the 50% in 1966. And those could not have been the proper ratings because Mr. Perkle was entitled to a total rating in 1953 and they unlawfully reduced it. Therefore, in 1956 as well as 1966, he was entitled to those protections that were afforded by these very specific VA regulations. It seems to me that your opponent argues that. While that may be true, that the 100% rating applied in 1953, when they made the 1956 and 1966 ratings, to go back now, the only way that can be changed is with an independent Q finding. That the law and the regulations don't permit or there's no way by which, even if we accept everything you're saying, that there's no way to go back and change the 1956 and 1966 ratings without a Q finding and that we don't have a Q finding in this case for those two years. But we do have a Q finding in the 1953 decision and that's why this case focuses on the meaning of the phrase about same effect. If that phrase is rendered meaningless by the analysis that you have just offered, which is the VA's defense, then there is simply no way that there is any impetus to the meaning of that phrase. Why is it rendered meaningless? I don't understand that. Wait, wait, wait. You can make the same argument that you're making now as to the effect of the elimination of the 1956 rating reduction in the Q context. But the fact that procedurally you have to raise this as a Q claim doesn't mean that your argument becomes meaningless, right? I disagree, Your Honor, because the test under Russell is that it is the facts known at the time. And the facts known at the time was that the rating decision in 1953 was whether he should continue to have a 70% rating. I don't think you're really responding to my question. You're saying that if we say that this has to be brought as a Q claim that means the statutory provision on which you rely is meaningless. I don't understand why that's true. You could make that argument in a Q context, right? You could, Your Honor. However, the question becomes, what is the intent of Congress in creating Q statutes? It is to correct mistakes. Such a holding as you're suggesting, requiring then three Q actions, triples the burden on the veteran. As opposed to simply just having to establish Q in 1953, he has to establish Q in 1956 and Q in 1966, when in fact, but for the Q error in 1953, there would not have been a decision in 1956 or in 1966 because they would have had to apply the same protections of 3.170 and 3.343 because he would have been rated as 100% and he would have had a protected rating. He was entitled to the benefit of that and therefore you increase the burden on the veteran, which is contrary to the intent of Congress in creating this right to correct mistakes. Not to correct mistakes over and over again. This is like a game of dominoes. The first error in 1953 knocked over the decision in 1956. Well, maybe, but it doesn't seem to be obvious on the face of it that that's true. I think the government would argue that there was an independent and the board found there was an independent basis for the 1956 action based on intervening medical examinations and things of that sort. And maybe that those medical examinations occurred. In fact, I think there's some support in the record for this after the three month period, which you say is necessary. So, I mean, it's not immediately apparent that the 53 Q carries over to 56 and 66. But it is immediately apparent, Your Honor, because the protections were not afforded under the regulations that I've referred to because he wasn't rated a total rating. But under Q you've got to show that there would have been a different result. If the 56 decision, for example, shows that the standard was satisfied, there was evidence that this was done after the three month period and there was independent evidence and all of that, maybe the VA would conclude that there was no Q here because you haven't shown that there would have been a different result if the error had been corrected. Well, with respect, Your Honor, that still imposes the additional burden that is not part of the intent of Congress in using the phrase have the same effect as if the decision had been made correctly at the time. Because if the decision had been made correctly at the time, then these other two decisions would not have been made because they would have been required to have applied the 100% protection regulations. The problem with bringing... You haven't shown that applying the 100% protection regulations would have led to a different result in 56 just because you have removed the rating reduction in 53. There's an issue here as to whether that would happen or not and that would seem to be something that you would normally have to pursue in a Q claim. But with due respect, Your Honor, we didn't get the benefit of appealing the Board's dismissal. The Veterans Court never reached the question of the merits because the Board didn't address the merits. This whole hypothetical discussion about what might or might not have been able to be shown was not reviewed by the Veterans Court because the Board dismissed Mr. Perkle's appeal. Mr. Perkle was denied both administrative appellate review as well as judicial review. The Veterans Court did not review a decision of the Board that reviewed the decision of the VA that implemented the VA's decision as the 2006 Board decision was implemented. That was denied him. That's what he appealed. He had the right to appeal that and the question in this case is whether or not this statute does or does not permit the appeal that was taken. Have there been any cases prior to this or involving this situation where Mr. Perkle has alleged Q with respect to the 56 and 66 ratings? Has he ever challenged those ratings based on Q? I have a vague recollection that there was a challenge, Your Honor, but I'm sorry. At this moment, I think that I just don't recall. I mean, what you're worried about is the Hill yard, which we can ask the government. Yes. Thank you very much, Your Honor. Mr. Coder, is that how you pronounce it? Yes, Your Honor. So how about suppose we agree with you in this case and Mr. Carpenter goes back and he says, okay, I hear you. I'm supposed to pursue this by Q. I'm now going to file a new Q claim with respect to the 56 and 66 rating decisions. Are you going to come in and say, no, no, you can't do that because you tried it once before and under Hill yard, you're barred? For the 66, yes, because it became a 67 board decision and the board then explicitly rejected that under Hill yard in a 2002 board decision. What happened was in 2001, Mr. Perkle raised simultaneous Q challenges to the 53, the 56, and the 67 decisions. The board rejected the 67 decision as not containing Q. The regional office rejected the 53 and the 56. Mr. Perkle only appealed the 53 to the board. That became the 2006 board decision that is the basis of the ultimate Q finding. The 56 regional office decision was not appealed, but because it did not become a board decision, still free to raise the Q claim to the 56 decision. Let me ask you a question. So in 1953, did the material improvement standard exist? You're going to reduce a rating from 100% downward to the next level. In 1953, were you required to find a material improvement in Mr. Perkle in order to do that? Yes, and the specific reason why the Q claim was granted. Then let me follow this up. If we go back, if because of the Q decision went back to 53 and changed the rating to 100%, and in 1956, the board looked at that 53 rating because it's an ab initio change. They were looking at 100% rating to bring it down to the next level. Weren't they required at that time to have applied a material improvement standard? Yes, and it's a question that would be the subject of a Q claim whether the 56 board, if it had known that it was 100% going in, whether it still could have found material improvement. Obviously, they didn't know in 56, right? Right. But since we're changing ab initio, we're going back, and the statute says that when you go back and you change it, you're changing the entire panorama here. It has the effect as if the decision had been made in the first instance. Why should we go back then and say that the 56 decision as a matter of law was Q because they did not apply the material improvement standard? That would be the subject of a separate Q claim. That's not what we're addressing here. I think that's what your opponent is alleging. And for a Q claim, it would have to be shown that it would be outcome determinative, and that would ultimately be first application of a lot of facts by this court. But even if it were to go through the VA, there would still be a question of whether the 56 decision, which was based on a separate medical examination, and there was a prior period of employment. The basis for the 53Q decision was there was no prior period of employment. Here, Mr. Perkle had been employed from 1953 to 1955. But we do agree that if we reconstruct the scenario here, and in 1953 we have a 100% rating, that means that in 1956 the board had to apply the material improvement standard in order for there to be a reduction in rating. They didn't do that. That's subject to Q. It's a misapplication of the law. Then what prevents us from finding that as a matter of law the 56 decision was erroneous due to Q? Because the 56 decision is not being challenged for Q in this appeal. The 56 was a separate final decision of the regional office. It was the subject of a Q claim that was denied, wasn't appealed. Mr. Perkle, now Mrs. Perkle's appeal, is explicitly premised upon that not being a Q challenge to the 56 decision. So that decision is not before this court. All that's before this court is a claim that the board's application of the 2006 Q for the 1953 automatically carries forward to not only 1956. The court will also note on page 53 of the joint appendix there are actually 15 subsequent rating decisions. If it doesn't carry forward, what effect does it have at all? It carries forward from the date of the original decision until the next final decision of the RO, which is exactly what happened here. I guess what you're saying, if I understand it correctly, is that if the 53 decision is wiped out, you can't use it to justify the 56 decision. But that the 56 decision may not necessarily be changed in the Q proceeding in an outcome determinative way, even though the 53 decision is wiped out. Well, first, it wasn't wiped out. It was reversed or revised. So it's not made void. One of the points in the brief is that subsequent decisions are made void. There's no provision for that. But, yes, the 56 decision. What's the matter with what I said? I thought, I mean, Mr. Carndor is arguing that the extent of the 56 decision rested on the 53 decision. That's gone, right? It could be made incorrect, but it would have to be through a Q challenge. Right, but it's gone. In the context of a Q challenge, it's gone. The 53 decision is gone. The extent of the 56 decision rests on the 53 decision. There was an error there. And then it becomes a question of whether that error was outcome determinative, right? Yes, although I'm not sure. The 53 decision wasn't gone. It was simply corrected to have been 100%. So it's not gone, gone, but it's corrected. The 56 rating, though, it took it to the next level, and that's how this works. I mean, the ratings are looked at whether you reduce to the next level. So I see two problems here. One is that the material improvement standard was not applied. And second, when the 56 rating came out and they reduced it to the next level, they reduced it from 75% down to, I believe, 50%. When really we go back and change the scenario as the statute requires, they should have reduced it from 100 to 75. And that sets up this domino effect that your opponent is talking about. Well, that would be the subject of the Q challenge to the 56 decision on whether, if they had known going in, whether the material improvement would have been met. And whether you go one level or two, that would be another subject for Q challenge, but that's not the subject of the appeal. We're looking at the interpretation of the statute. I guess the issue here is, because we know that in 56 they were not aware of the mistake that the prior rating board had done. But it seems that if the statute says that it has effect thereafter, as if the decision had been made in the first place, doesn't that instruct us to find that all other ratings following that were erroneous? No, and it's because the Q challenge changes that particular decision. That particular decision was the rating decision effective 1953. There was an entirely new rating decision effective 1956. So the 1953 decision has been corrected to 100%. The 1956 decision is a totally separate decision, and there are only two ways to reopen that under the Cook decision, or through new material evidence or through Q. Why couldn't we do it under 5109AB, which says that, and this goes back to the evidence established there, prior decision is reversed. We know that. Then it goes on and says that a rating or other judicative decision constitutes a reversal of prior decision on grounds of clear and unmistakable error, has the same effect as if the decision had been made on the date of the prior decision. I mean, doesn't this ask us or instruct us to go back and look at the 56 decision and 66 decision and to reconstruct that and look at those decisions in view of the 53 change? No, unless there's been a Q challenge to the 56 or the 67 decision, which there has not been in this appeal. The statute says to the extent that the 56 and 66 or 67 decisions rest upon the 53 rating decision, they can no longer rest on that, right? Yes, if there were a challenge to those. Yeah, so what you're saying, as I understand it, is that yes, the statute operates to remove the 53 decision as a prop, as though it had never been made, but that doesn't necessarily mean that in 56 and 67 there would have been a different result if that had happened. Yes. But if you're rating and you're rating down to the next level, doesn't that mean that you had a different result? I mean, it's... The question of whether this would be a jump down of one rating level as opposed to two rating levels, that would be a question you'd raise in a Q challenge to those later decisions. We're not addressing that here. The reasoning... The other reason advanced by the Veterans Court was that the challenge would amount to a freestanding challenge to an effective date. Again, with respect to subsequent rating decisions, which are final decisions, the statutes and regulations provide for ways to correct errors in those, even errors predicated upon previous errors, if to the extent that the subsequent decisions relied upon them, which we don't consider, you know, take a position on here because those aren't at issue, although we know that there were separate medical examinations and the Veterans Court found that the premise of the appeal was factually incorrect for those reasons. But again, the mechanism for doing so is through either new and material evidence or through a Q challenge to those particular decisions. Absent that, a Q challenge and a Q correction to an earlier decision corrects the effect of that decision, which is the rating period covered from that decision until the next final decision. That is what occurred in this case, and for that reason, there was no error on the part of the Veterans Court in affirming the decision of the Board. For those reasons, we respectfully request that the Court affirm the decision of the Court of Appeals for Veterans Claims. Okay. Thank you, Mr. Toder. Mr. Carpenter, you have a little over three minutes here. I'd like to try to pick up on Judge Rayna's analysis of the statute in relationship to the notion of attempting to re-litigate the question of Q in the 56 and the 66 decision. The problem with the government's position in viewing this as necessary is not only that the statute requires us to treat it as though it had the same effect, it asks you now to say that we're going to hypothetically change the decisions that are being attacked for Q, because the decisions made in 56 and 66, as Judge Rayna correctly points out, were for the reduction of a 70% rating and the reduction of a 50% rating. Under the government's theory, we get to change that decision to the reduction of a 100% rating. What the government is saying is that in any Q claim, you have to show that the outcome determines it. You have to show in the context of a Q claim that removing the 53 rating and restoring the 100% would have resulted in a change in the 56 rating decision. What's so strange about that? Because the case law is, as the board found in 2006, is when you make this type of procedural error in the reduction of a total rating, then the reduction for not using the material improvement criteria makes the decision void ab initio, which shows by law... There is no authority for that. I respectfully disagree, Your Honor. The Kitchens case below clearly says that when you do not apply this provision and the government must concede that these protective provisions were not applied in 56 or in 66, then those decisions were void ab initio, because they didn't start at the correct starting place, a 100% rating, and afford these regulatory protections. And therefore, I'd ask this court to reverse the decision of the Veterans Course on the basis of the interpretation of... The Kitchens case did not involve a situation like this one, right? No, it did not. Not on a secondary question, Your Honor. But the question that you're posing to me is the necessity for the veteran to re-meet this standard a second and a third time in the 56 and 66 decisions. I'm saying that the plain meaning of the statute cannot be read to impose those additional burdens. He did it once, and therefore the decisions that were dependent prior simply could not have correctly applied the law as a matter of law, unless there's further questions. Thank you very much, Your Honor. The case is submitted. Thank both counsels.